# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                         **Case No. 05-CR-289**

**JUAN CURIEL**
        **Defendants.**

## DECISION AND ORDER

Defendant Juan Curiel, charged with possession with intent to distribute five kilograms or more of cocaine, moved to suppress evidence seized from his vehicle and statements he made while detained in the arresting trooper's squad car. The magistrate judge to whom the motions were referred held a hearing then recommended denial, and Curiel objected. On January 26, 2007, I adopted the recommendation in part and denied the motion to suppress physical evidence. However, I ordered the government to submit additional evidence on the motion to suppress statements, i.e. an English-transcription of the statements at issue, which were originally made in Spanish and which had not been interpreted at the hearing before the magistrate judge. The government has submitted the transcription, and the parties have been given a chance to file supplemental briefs. I now deny the motion to suppress statements.

## I. FACTS AND BACKGROUND

In my January 26 Decision and Order, I set forth in full the facts pertaining to the stop and search. (R. 84 at 1-4.) I therefore provide an abbreviated version of those events in this decision and focus instead on defendant's post-arrest statements.

Wyoming State Trooper Benjamin Peech stopped Curiel and his co-defendants,

Santiago Meraz and Vanessa Ledezma, for a traffic violation. The encounter was taped by a video recorder mounted in Peech's squad car.

Peech spent about twenty minutes checking the status of the three and writing citations, then told Curiel he was "good to go." However, before Curiel left the area, Peech asked Curiel if he could speak with him further, to which Curiel agreed. Peech then asked for consent to search the car for drugs, which Curiel (and later Meraz) voluntarily provided. After about a forty-five minute search, Peech discovered a hidden compartment, which he believed contained contraband, and arrested Meraz, Curiel and Ledezma.

Peech decided to place Curiel and Ledezma in his car. Peech did not at that time provide Miranda warnings and stated that he would explain the situation later. Ledezma began to cry, and Curiel stated that he did not understand what was going on. Peech stated, "You might want to tell your girlfriend [Ledezma] why," closed the squad door and left. Between 9:00 and 9:10 p.m., Ledezma and Curiel conversed in Spanish as follows:[1]

CURIEL: just tell them you don't know anything.

LEDEZMA: I'm not dumb, I know I don't know anything.

CURIEL: don't worry I have people that can take care of this.

LEDEZMA: oh my god.

CURIEL: this is not your mess.

CURIEL: what was bad was SATI'S story, he shouldn't have said anything.

CURIEL: I don't want you to have to pay for this, you don't know anything.

---

[1] The conversation was interpreted by a City of Milwaukee police officer based on the video tape and is admittedly not verbatim. However, Curiel has not objected to the government's transcription.

2

| | |
|---|---|
| CURIEL: | I'll take care of you, go back to your mom's house. |
| LEDEZMA: | I don't want anything to happen to you. |
| CURIEL: | I have something there in Los Angeles, if anything happens to me, go look for chuy, and have him give you what's mine, you take it, its yours. |
| CURIEL: | you don't tell anybody anything. he can't see it. that can't be taken out, they can't take anything out. |
| CURIEL: | he doesn't know what's happening, he doesn't know what he is doing. |
| CURIEL: | what? |
| CURIEL: | he can't put his hands in either side, and I have the key. |
| LEDEZMA: | didn't he search you? |
| CURIEL: | yes but I have the key. |
| CURIEL: | what my love? |
| LEDEZMA: | he's going to open it. |
| CURIEL: | everyone had gloves, no one touched anything understand? |
| LEDEZMA: | uh huh. |
| CURIEL: | he will find it, but no one touched it okay? |
| CURIEL: | don't say anything, they are recording. |
| CURIEL: | he found something. |

(R. 85-2 at 1-2.) At 9:10 p.m., Curiel said, in English, "What's he looking for?" Ledezma said, "I just want to go home." At 9:11 p.m., the tape in Peech's squad car ended. Peech replaced the tape, and the recording resumed at 9:23 p.m. By that time, Peech had opened the compartment and removed several bricks of suspected cocaine, which he placed on the hood of his squad car. At 9:28 p.m., shortly after a drug sniffing dog arrived and alerted to the front

3

dash area, Peech provided Curiel with his Miranda rights and questioned him.

## II. DISCUSSION

Curiel seeks suppression of his statements made in Peech's squad car prior to the provision of Miranda warnings. In order to safeguard the right against self-incrimination, a suspect must be advised of certain rights prior to being subjected to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444 (1966). To implicate Miranda, the suspect must be both "in custody" and subject to "interrogation." United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996). It is undisputed in the present case that Curiel was in custody when he made the relevant statements; the issue is whether he made those statements in response to interrogation by Peech.

Interrogation is defined as "either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). Thus, for purposes of Miranda, interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301.

Under the circumstances of this case, Peech's statement, "You might want to tell your girlfriend why," could constitute interrogation. A reasonable person could consider such statement an invitation to Curiel to confess that he and Ledezma were being arrested because he was transporting drugs in the hidden compartment. See United States v. Westbrook, 125 F.3d 996, 1002 (7th Cir. 1997) (stating that the test is whether a reasonable objective observer would have believed that the questions claimed to have been unlawful interrogation were in fact reasonably likely to elicit an incriminating response).

4

However, even if a police officer does engage in interrogation prior to providing warnings, there is no Miranda violation if the suspect does not respond to the officer's interrogation. United States v. Peterson, 414 F.3d 825, 828 (7th Cir.), cert. denied, 126 S. Ct. 592 (2005). This is so because there "is no abstract 'right to be warned.'" Id. at 828 (citing United States v. Patane, 542 U.S. 630 (2004)). Rather, Miranda creates a rule of evidence requiring that un-warned statements made in response to custodial interrogation be excluded. If no such statements are made, there is no violation. Id. Further, volunteered statements not made in response to any question posed by the officer are admissible under Miranda. United States v. Abdulla, 294 F.3d 830, 834 (7th Cir. 2002).

In the present case, Curiel did not respond to Peech's statement but rather remained silent until Peech left. Curiel then conversed with Ledezma inside the squad, outside of Peech's presence, and the contents of his statements, quoted above, reveal that he did not speak in response to Peech's remark. Instead of explaining to Ledezma why she found herself in police custody, Curiel tried to persuade Ledezma not to talk, and that everything would be okay. There is no indication that Curiel's statements were motivated by Peech's remark. Nor is there any indication that Peech coerced Curiel into speaking.[2] Instead, Curiel voluntarily

---

[2] It could be argued that Peech's remark did not constitute interrogation at all, and that he was simply responding to Curiel's statement that he did not understand what was going on. See United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) (finding no interrogation where the defendant asked: "Why is this happening to me?" and the officer replied: "You can't be growing dope on your property like that."). Courts have held that an officer can respond to a suspect's request for the reason why he is being arrested without engaging in interrogation. Id. at 8 (collecting cases). However, because Curiel did not respond to Peech's remark, I need not definitively resolve the issue of whether it constituted interrogation. I do find, however, that Peech's brief, off-hand remark before closing the squad door and leaving in no way coerced Curiel into making these statements. As explained in the text, Curiel spoke voluntarily in an effort to calm Ledezma, and as discussed in greater detail in my January 26 Decision, at no point during the entire encounter was Peech threatening or overbearing.

5

spoke in order to attempt to re-assure his girlfriend, who was upset and crying. Therefore, his statements need not be suppressed under Miranda.[3] See United States v. Burns, No. 02-121, 2002 U.S. Dist. LEXIS 23194, at *14-15 (D. Minn. June 11, 2002), adopted by, 2002 U.S. Dist. LEXIS 12405 (D. Minn. July 3, 2002) (concluding that the defendant's un-warned statements made to co-defendant while both were detained in a squad car, which were captured by video recorder, need not be suppressed under Miranda).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that Curiel's motion to suppress statements (R. 49) is **DENIED**.

Dated at Milwaukee, Wisconsin this 12th day of February, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[3] In addition to concluding that Curiel did not respond to Peech's remark, the magistrate judge further found that there was a break in the stream of events between Peech's "interrogation" and Curiel's statements. See Watson v. Detella, 122 F.3d 450, 454 (7th Cir. 1997). Because I conclude that Curiel did not speak in response to Peech's remark, I need not address this alternate theory.

6